IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JAMES HAWTHORNE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00301-BP |
| | § | |
| BIRDVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Birdville Independent School District's Motion for Partial Dismissal of Plaintiff's Original Complaint and accompanying Brief, filed on April 21, 2023 (ECF Nos. 5, 6); Plaintiff Hawthorne's Brief in Response to Defendant's Motion to Dismiss, filed on May 12, 2023 (ECF No. 8); and Defendant Birdville Independent School District's Reply Brief in Support of its Motion for Partial Dismissal of Plaintiff's Original Complaint, filed on May 18, 2023 (ECF No. 9). After considering the pleadings and applicable legal authorities, the Court **GRANTS** the Motion and **DISMISSES** Plaintiff's Title VII retaliation claim, time-barred Texas Labor Code retaliation claims based on alleged violations occurring prior to October 9, 2021, and Texas Labor Code retaliation claims based on alleged violations occurring on or after October 9, 2021.

**I.    BACKGROUND**

On March 23, 2023, James Hawthorne ("Hawthorne") filed this suit against the Birdville Independent School District ("BISD"), alleging that BISD had violated his rights under Title VII of the Civil Rights Act of 1964 and Texas Labor Code § 21.051. ECF No. 1. He contends that "the Defendant discriminated against him and retaliated against him" when he did not receive as large

a raise as initially promised. *Id.* at 1. When Hawthorne questioned the size of his raise, his "female supervisor on behalf of BISD" allegedly "blindsided" him with "allegations of sexual harassment and creating a hostile work environment which ultimately led to BISD demoting him." *Id.* at 1-2. He seeks "compensation for all lost wages and benefits, including loss of Social Security benefits that [he] would have been paid if he had finished out his career at BISD," prejudgment interest, post judgment interest, compensatory damages, and attorney's fees. *Id.* at 8-9.

Hawthorne alleges that he is "a white male." *Id.* at 2. BISD employed him for eight years as a Warehouse Central Storage Supervisor, and he had received "exemplary reviews" and "was never written up for any kind of disciplinary action" until the incident at issue in the case. *Id.* at 2-3. He alleges that his supervisor, Shelly Freeman ("Freeman"), created an "ongoing hostile work environment due to her continual discussion about her sex life with Hawthorne." *Id*. at 3. Though this behavior allegedly made Hawthorne uncomfortable, he did not report her since he feared retaliation—especially since Freeman had previously stated that she "believed his position was not necessary." *Id.* She also had repeatedly described her children's toilet habits and the ways she punished them. *Id.*

In June 2021, BISD conducted interviews for a warehouse supervisor position, and Hawthorne started to inquire about how to get his salary reviewed. *Id.* Freeman had "told [him], more than once, that he got paid too much and that if he wanted to be paid more, he should 'find another job.'" *Id.* In July 2021, BISD Human Resources emailed Hawthorne, stating that his pay would be increased from $219.96 per diem to $254.60 per diem and that this raise had been approved by Katie Bowman ("Bowman"), BISD's Associate Director of Finance. *Id.* at 3-4. However, on August 9, 2021, "Bowman told [Hawthorne] via email that the $254.00 per diem was incorrect and would not be his salary. Instead, [his] raise was reduced to a rate of $238.21." *Id.* at

2

4. He "inquired about the rate change to both Freeman and Bowman, but he never got a response." *Id.* Hawthorne alleges that the size of the raise he was granted was not adequate and "was more appropriate for a BISD employee with 3-4 years' work experience rather than the 7-8 years of seniority" he had. *Id.*

While Hawthorne was awaiting responses to his inquiries about the size of his raise, he was called to a meeting with HR on August 17, 2021. *Id.* At this meeting, Hawthorne was "told that he was being investigated for claims of sexual harassment and for creating a hostile work environment and was placed on paid administrative leave." *Id.* "An investigation was conducted, and a telephone hearing was held on September 1, 2021 with no resulting written decision. However, [he] was invited to return to work shortly after the hearing. [He] was then reassigned to a lower paying job with less seniority." *Id.* On October 8, 2021, "Bowman wrote him up" for "creating a negative work environment," but Hawthorne alleges that she did not "offer any specific incidents in the write-up." *Id.* at 4. "Hawthorne gave his two week notice on January 3, 2022." *Id.* at 5.

Hawthorne asserts three claims in his complaint. First, he alleges discrimination under Title VII. Though it appears he has now abandoned all of his discrimination claims (ECF No. 8), he initially argued that because he was "exposed to ongoing sex talk from his supervisor," Freeman, "while at the same time being told that his position was superfluous and not necessary," he was subjected to a hostile work environment. ECF No. 1 at 6. Relatedly, he also asserted a constructive discharge claim, alleging that "[t]he conduct was so severe that it ultimately caused [him] to be demoted and altered the terms and conditions of his employment such that [he] felt he had no option but to resign in January 2022." *Id.* He also alleged that "[his] supervisors, Shelly Freeman and Katie Bowman, both white females, were empowered by Defendant BISD to take tangible

3

employment actions against [him] which they did in the form of reversing his raise, writing him up for unspecified and vague accusations and ultimately demoting him." *Id*.

Second, he alleges retaliation under Title VII. Though he did not explicitly connect his experience to the elements of a prima facie Title VII retaliation case, Hawthorne reiterated that when he "began to ask about getting an increase in salary that matched his seniority, he initially got the raise he desired." *Id*. at 7. However, "Shelly Freeman intervened and not only withdrew the raise but at virtually the same time, stated there were accusations of sexual harassment against him by female employees and put him on administrative leave." *Id*.

Third, Hawthorne alleges violations of Texas Labor Code § 21.051. Specifically, he argues that "[BISD's] actions relating to his employment with [BISD], including ongoing sexual harassment from [his] direct supervisor, [BISD's] actions in revoking an appropriate raise to [his] salary and then reprimanding [him] to divert attention from the revoked salary increase and demoting [him] are all violations of Texas Labor Code § 21.051." ECF No. 1 at 8.

The Court notes that Section 21.051 only addresses discrimination, not retaliation. However, for the following reasons, the Court interprets Hawthorne's complaint as bringing both a discrimination claim (later abandoned in ECF No. 8) under Texas Labor Code § 21.051 and a retaliation claim under § 21.055. First, Hawthorne brought claims for both discrimination and retaliation under Title VII. ECF No. 1 at 5-7. Second, BISD interpreted Hawthorne's complaint as bringing both discrimination and retaliation claims under the Texas Labor Code in its Motion to Dismiss. ECF No. 5 at 1. Third, in his responsive brief, Hawthorne did not dispute that he brought a retaliation claim under the Texas Labor Code. ECF No. 8. Finally, the sentence quoted above (referencing Texas Labor Code § 21.051) could reasonably be read to allege both discrimination and retaliation claims. ECF No. 1 at 8.

BISD moved to dismiss Hawthorne's Title VII and Texas Labor Code claims "as [Hawthorne's] factual allegations do not support any plausible causes of action for sex discrimination or retaliation. Moreover, [his] discrete discrimination and retaliation claims arising under the Texas Labor Code are time-barred as a matter of law." ECF No. 5 at 1.

BISD argues that "[Hawthorne's] claims under the Texas Labor Code arising prior to October 9, 2021, are time-barred." ECF No. 6 at 4. BISD notes that the Texas Labor Code requires prospective plaintiffs to "file a Charge of Discrimination within 180 days from the alleged unlawful employment action." *Id*. Because of Hawthorne's date of filing, ultimately, "the only claims under the Texas Labor Code that can legally survive are [his] sexual harassment claim, as [he] had 300 days to exhaust such a claim, and [his] constructive discharge claim." *Id*. at 5.

The Court, however, understands that Hawthorne abandoned his sexual harassment and constructive discharge claims in his response to BISD's motion to dismiss. ECF No. 8. Hawthorne's response to BISD's allegation that the Texas Labor Code claims are time-barred was not entirely clear, but it appears that Hawthorne argues that because Texas is a "deferral" state with a "worksharing" agreement, the relevant deadline for asserting Texas Labor Code claims is 300 days, not 180 days. ECF No. 8 at 2-5. Hawthorne also argues in the alternative, noting that "[e]ven if the April filing with the EEOC is considered untimely according to the October 8th deadline, [BISD] continued to engage in discriminatory behavior up until Jan 25, 2022, when [Hawthorne] received his last paycheck that included a deduction of over $2,100 without a clear explanation for this deduction." *Id*. at 5.

Second, BISD argues in its Motion to Dismiss that "[Hawthorne] failed to plead a plausible claim for sex discrimination against [BISD]." ECF No. 6 at 5. BISD did not address Hawthorne's allegation involving a hostile work environment. Instead, it noted that even if he had been

5

subjected to adverse employment actions, he still had failed to provide adequate factual allegations on another key element of a discrimination claim: "that he was treated less favorably than other similarly situated people outside his protected class." *Id.* at 5-6. Hawthorne did not address his discrimination claims—whether they involved a hostile work environment or otherwise—in his response to the Motion, aside perhaps from one sentence in a section largely focused on whether his claims under the Texas Labor Code were time-barred. ECF No. 8 at 5, ¶ 12. Accordingly, BISD considered any discrimination claims under Title VII and the Texas Labor Code to be abandoned (ECF No. 9 at 2), and the Court does likewise.

Third, BISD argues that "[Hawthorne] failed to plead a plausible claim for retaliation against [BISD]." ECF No. 6 at 6. Specifically, BISD argues that Hawthorne failed to show that "he engaged in a protected activity," one of the required elements of a retaliation claim under Title VII. *Id.* at 6-7. Citing Fifth Circuit authority, BISD claims that "[a] 'protected activity' occurs when an employee opposes an employment practice that he reasonably believes violates Title VII." ECF No. 6 at 7; *see also Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 224 (5th Cir. 2023). BISD argues that "[h]ere, there are no allegations reflecting [Hawthorne] engaged in a protected activity. Indeed, [he] does not tie his request for a raise to his sex or otherwise plead factual allegations reflecting members outside his protected class (i.e., women) were receiving raises that he also was entitled to." ECF No. 6 at 7.

In response, Hawthorne states that in June 2021, "[he] began to suspect that withholding his salary increase could be the result of discriminatory behavior perpetuated by Freeman, therefore he began questioning why he had not received a salary increase." ECF No. 8 at 6. He further explains that he "engaged in a protected activity when he began investigating why his salary was not being reviewed and began asking human resources about his reduced salary increase. This

6

opposition to what [he] believed to be discriminatory behavior by [BISD] also qualifies as a protected activity under Title VII." *Id.* at 7. BISD replies that "[w]hile the EEOC recognizes 'asking managers or co-workers about salary information to uncover potentially discriminatory wages' as a protected activity, [Hawthorne's] allegations are a far cry from this scenario." ECF No. 9 at 2.

Accordingly, it appears that Hawthorne's live arguments are that 1) BISD retaliated against him in violation of Title VII; 2) his claims under the Texas Labor Code are not time-barred; and 3) BISD retaliated against him in violation of Texas Labor Code § 21.055.

## II.   LEGAL AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a viable claim for relief, a complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff ... and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A statute of limitations may support dismissal under Rule 12(b)(6) when it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or avoidance of the bar. *Jones v. ALCOA, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

"A district court may refuse leave to amend if the filing of the amended complaint would be futile, i.e., if the complaint as amended would be subject to dismissal." *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014). "A dismissal with prejudice is appropriate when amending a complaint would be futile." *Taubenfeld v. Hotels.com*, 385 F.Supp.2d 587, 592 (N.D. Tex. 2004) (citing *Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)).

## III.   ANALYSIS

### A.   Hawthorne has not stated a plausible claim that BISD retaliated against him in violation of Title VII.

To survive a motion to dismiss and show that his claim is plausible, a plaintiff must plead sufficient facts on all of the ultimate elements of a Title VII retaliation claim. *Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 244, 245 (5th Cir. 2017). "[A]lthough plaintiffs do not 'have to submit evidence to establish a prima facie case ... at [the dismissal] stage, [they must] plead sufficient facts on all of the ultimate elements ... to make [their] case plausible.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)) (emphasis and alterations in original). "To state a claim for retaliation under Title VII, a plaintiff must show that (1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Cabral v. Brennan*, 853 F.3d 763, 766-67 (5th Cir. 2017) (internal citations and quotations omitted). "An employee engages in protected activity when she opposes an employment practice that she 'reasonably believes' violated Title VII." *Wallace*, 57 F.4th at 224. "Complaining about something that is not an unlawful employment practice is not sufficient." *Sanders v. City of Fort Worth*, No. 4:16-CV-1153-A, 2017 WL 1102709, at *3 (N.D. Tex. 2017).

8

The employment practice that Hawthorne opposed is that he was initially denied a raise and ultimately did not receive a raise that he thought was commensurate with his tenure at BISD. ECF No. 8 at 7. But he has not pleaded facts demonstrating that this opposed employment practice violated Title VII, since he has not pleaded facts sufficient "to raise a right to relief above the speculative level" demonstrating that he reasonably believed this opposed employment practice had anything to do with his sex. *Twombly*, 550 U.S. at 555; *Wallace*, 57 F.4th at 224; *Taliaferro v. Lone Star Implementation & Electric Corp.*, 693 F. App'x 307, 310 (5th Cir. 2017) ("In determining what constitutes a reasonable belief that a Title VII violation has occurred, we have emphasized the importance of the severity and frequency of the alleged conduct. We also consider the context in which [the employee] opposed her employer's conduct.") (cleaned up). Thus, since he has not pleaded facts to show the first element of a Title VII retaliation claim, this claim is implausible.

Even when read in the light most favorable to Hawthorne, the facts pleaded demonstrate that BISD engaged in the opposed employment practice not because of Hawthorne's sex, but because BISD thought that he was unnecessary, thought he was paid too much, or wanted to replace him with a different warehouse supervisor whom they were interviewing. ECF No. 1 at 3. BISD could believe that an employee was unnecessary, was paid too much, or should be replaced because of that employee's sex, but Hawthorne has not alleged facts to show that this was the case. Cursory references to the fact that Hawthorne believed that his supervisor's reluctance to give him a raise might be discriminatory do not raise his Title VII retaliation claim "above the speculative level," since he pleaded no facts to suggest that his subjective belief was reasonable. ECF No. 8 at 6; *Twombly*, 550 U.S. at 555; *Wallace*, 57 F.4th at 224, *Taliaferro,* 693 F. App'x at 310.  Similarly, while the Equal Employment Opportunity Commission ("EEOC") recognizes "asking managers

9

or co-workers about salary information to uncover potentially discriminatory wages" as protected activity, the facts pleaded do not demonstrate that Hawthorne reasonably believed his wages (or those of any other BISD employee) evidenced discrimination. ECF No. 9 at 2; *see Wallace*, 57 F.4th at 224. Accordingly, Hawthorne has not alleged facts to show that he was engaged in a "protected activity" when he opposed BISD's initial reluctance to give him a raise and the ultimate size of his raise. More specifically, he has not pleaded facts to show that he was opposing an employment practice that he reasonably believed violated Title VII.

> **B.      Hawthorne's retaliation claims under the Texas Labor Code based on alleged violations occurring prior to October 9, 2021 are time-barred.**

The portion of the Texas Labor Code under which Hawthorne seeks relief falls within the Texas Commission on Human Rights Act ("TCHRA"). To state a claim under the TCHRA, a plaintiff must file a charge of discrimination with the EEOC or the Texas Commission on Human Rights ("TCHR") within 180 days after the alleged unlawful employment action. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 (5th Cir. 2004) (abrogated on other grounds by *Hamilton v. Dallas Co.*, 79 F.4th 494 (5th Cir. 2023)). Under established legal precedent, a claimant must file a charge for violation of the TCHRA within 180 days after the violation occurred notwithstanding whether a similar charge of discrimination under federal law was timely filed with the EEOC. "[W]hether a plaintiff filed a timely charge for his or her federal claims has no impact on the analysis whether a plaintiff filed a timely charge for his state claims." *Barr v. Stripes L.L.C.*, No. 21-20278, 2022 WL 1044695, at *5 (5th Cir. Apr. 7, 2022).

The parties dispute whether the filing date was April 7 or April 6, 2022 and accordingly dispute whether the relevant date for determining the extent to which Hawthorne's TCHRA retaliation claims are time-barred is October 9 or October 8, 2021. ECF No. 6 at 4-5; ECF No. 8 at 4. In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true,

viewing them in the light most favorable to the plaintiff.'" *Yumilicious Franchise*, *LLC*, 819 F.3d at 174 (citing *Twombly*, 550 U.S. at 570). But those facts must, in fact, be well-pleaded. Here, Hawthorne's claim that he filed a complaint with the EEOC on April 6, 2022 is undermined by his own counsel's letter dated April 7, 2022 (ECF No. 1-2 at 1). Therefore, the Court concludes that the charge was filed no earlier than April 7, 2022, and thus the Court will not consider alleged TCHRA violations occurring before October 9, 2021 in the absence of a reason for equitable tolling.

"Equitable tolling is to be applied 'sparingly.'" *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). The plaintiff has the burden of justifying the tolling. *Id.* The Fifth Circuit has described three bases for equitable tolling. *Id*. A plaintiff may show either "(1) the pendency of a suit between the same parties in the wrong forum; (2) the plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; [or] (3) the EEOC's misleading the plaintiff about the nature of [his] rights." *Id*. This list, however, is not exhaustive and "leaves the door open" for a court to recognize other exceptions. *Id*. Additionally, the Court is more forgiving "when a claimant or [his] attorney has exercised due diligence in pursuing [his] right." *Id*. Hawthorne has not asked the Court to toll this deadline, he has provided no reason or explanation for why he did not file his claim until April 2022, and none of the bases for tolling apply. Therefore, Hawthorne's TCHRA claims involving alleged violations that occurred prior to October 9, 2021 are time-barred and should be dismissed with prejudice as he cannot cure this defect.

    **C.    Hawthorne has not stated a plausible claim for retaliation under the Texas Labor Code based on alleged violations occurring on or after October 9, 2021.**

Section 21.055 of the Texas Labor Code, entitled "Retaliation," states:

11

> An employer, labor union, or employment agency commits an unlawful employment practice if the employer, labor union, or employment agency retaliates or discriminates against a person who, under this chapter: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.

Tex. Labor Code § 21.055 (West 2023).

 Hawthorne has not pleaded sufficient facts to show that BISD violated this provision. First, even assuming that BISD *had* retaliated or discriminated against Hawthorne on or after October 9, 2021, BISD did not retaliate or discriminate against him for opposing a discriminatory practice, because as explained above, he did not have reason to believe that the size of his raise or BISD's reluctance to give him a raise was discriminatory. As to the remaining requirements of § 21.055, Hawthorne has not alleged that BISD retaliated or discriminated against him for filing a charge, filing a complaint, or "participat[ing] in any manner in an investigation, proceeding, or hearing." He only alleges that it retaliated against him for inquiring about the possibility or size of his raise. *See* ECF No. 8 at 7. Therefore, Hawthorne has not pleaded facts to show a violation of Labor Code § 21.055.

 Furthermore, the provisions of Title VII and TCHRA regarding retaliation are very similar, and the Fifth Circuit has stated that "[t]he substantive law governing Title VII and TCHRA retaliation claims is identical." *Gorman v. Verizon Wireless Texas, L.L.C.*, 753 F.3d 165 (5th Cir. 2014). Because of this similarity, the Court cannot conclude that Hawthorne failed to state a Title VII retaliation claim covering the entire employment period in dispute yet find that he successfully stated a TCHRA claim based on a portion of that same timeline beginning on October 9, 2021.

## IV.    CONCLUSION

Hawthorne has not pleaded facts to state a Title VII retaliation claim. Specifically, he has not pleaded facts demonstrating that the employment practice he opposed violated Title VII. He has not pleaded facts sufficient "to raise a right to relief above the speculative level" demonstrating that he reasonably believed this opposed employment practice had anything to do with his sex. Therefore, the Court **DISMISSES** these claims.

Hawthorne's retaliation claims based on alleged violations of the Texas Labor Code occurring prior to October 9, 2021 are time-barred, and equitable tolling does not apply. Any further amendments to the complaint would be futile because they could not affect the timeliness of Hawthorne's EEOC complaint. Under these circumstances, the Court **DISMISSES** these claims.

Hawthorne has not stated a plausible claim that BISD retaliated against him in violation of the Texas Labor Code based on alleged violations occurring on or after October 9, 2021. Therefore, the Court **DISMISSES** these claims.

Although the Court **GRANTS** BISD's motion to dismiss, it allows Hawthorne to replead his Texas Labor Code retaliation claim for violations that allegedly occurred after October 9, 2021 and his Title VII retaliation claim. "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Frias, et al. v. Hernandez, et al.*, No. 3:23-CV-0550-D, 2023 WL 7311193, at *4 (N.D. Tex. Nov. 6, 2023) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)). Because Hawthorne has not stated that he cannot, or is unwilling to, cure the defects that the court has identified, the Court grants him twenty-one

days from the date this memorandum opinion and order is filed to file a first amended complaint that addresses the deficiencies in his pleading noted above. *Frias*, 2023 WL at *4.

    It is so **ORDERED** on November 13, 2023.

                                                                                     _____
                                                                                     Hal R. Ray, Jr.
                                                                                     UNITED STATES MAGISTRATE JUDGE