IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JAMES HAWTHORNE,<br>    Plaintiff<br><br>v.<br><br><br>BIRDVILLE INDEPENDENT SCHOOL DISTRICT,<br>    Defendant | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | NO.   4:23-cv-00301-O |

## PLAINTIFF'S AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff James Hawthorne and files his Amended Complaint against Birdville Independent School District ("BISD") and hereby alleges as follows:

## NATURE OF COMPLAINT

This is an action instituted pursuant to alleged violations of the Plaintiff's rights under the Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, et seq to remedy acts of employment discrimination perpetrated against him by Defendant. Plaintiff contends the Defendant discriminated against him and retaliated against him beginning in 2018 when he was denied an opportunity to earn more money as an athletic coach within BISD, denied a promotion (given to a woman), and continuously denied appropriate step salary increases. Plaintiff asked about this but never got a straight answer and suspected discrimination by his two female superiors.  When he did not receive a raise in salary in July 2021 that he was informed by BISD Human Resources was already approved and started asking why, his female superiors produced a complaint against him by an administrative assistant for sexual harassment and instead

1

suspended him, and ultimately demoted him. Hawthorne's female supervisors at BISD intentionally targeted Mr. Hawthorne and subjected him to discriminatory and disparate treatment by passing over him for salary increases, employment opportunities and ultimately demoting him.

### A. PARTIES

1. Plaintiff James Hawthorne is an individual who is a citizen of the State of Texas.

2. Defendant, Birdville Independent School District is a public school district organized under the laws of the state of Texas. BISD is responsible for the policies, practices, and customs of its schools, as well as the hiring, training, supervision control and discipline of all its employees. Defendant may be served by delivering a copy of the summons and of the complaint to Defendant's superintendent, Gayle Stinson, Ed.D. at 6125 E. Belknap St., Haltom City, TX 76117.

### B. JURISDICTION and VENUE

3. This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)2 because a substantial part of the events or omissions giving rise to this claim occurred in this district and pursuant to 42 U.S.C. Section 2000e-5(f)(3) as Plaintiff was employed at BISD in Haltom City, Texas, and decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district.

### D. FACTUAL BACKGROUND

5. Mr. Hawthorne is a white male. Mr. Hawthorne worked for BISD for twelve (12) years and worked in his position as a Warehouse Central Storage Supervisor for eight (8) years. In his time with BISD, Mr. Hawthorne was never written up for any kind of disciplinary action (until October 8, 2021). In fact, he always received exemplary reviews, including in June of 2021. Mr.

Hawthorne was awarded BISD's "Touch of Class Award" in 2012-13, 2018-19 and 2021. The award is given to BISD employees "for making a difference in the lives of others." Since 2016, Shelly Freeman ("Freeman"), as the Director of Purchasing, was Mr. Hawthorne's supervisor. Ms. Freeman reported to Katie Bowman, Assistant Superintendent for Finance and Auxiliary Services ("Bowman").[1] Plaintiff was employed by BISD between April 2010 and January 2022 when he submitted his resignation as a result of being demoted by Bowman.

6. Mr. Hawthorne, while working under Freeman was subjected to ongoing sexual harassment by Freeman which created an intimidating, offensive and hostile work environment for Hawthorne due to her continuous comments to Hawthorne regarding her sexual relationship with her husband. Freeman was an ongoing "over-sharer." She told Hawthorne about when she had sex with her husband. Freeman often complained about being "sore" from the sex she had with her husband the night before. Freeman would say that she did not want to have sex but that her husband just won't leave her alone. She made statements to Hawthorne asking about his sex life which he would ignore and just not answer and/or change the subject. This ongoing "sex talk" from Freeman caused Hawthorne to dread going to work if he knew he would have to interact with Freeman as he never knew if he would have to hear about what happened the previous night in the Freeman bedroom.

7. Freeman also frequently told Hawthorne about her problematic children and bragged about the extreme forms of parental discipline that she imposed on them – including locking up one of her children in a cage because he was so out of control that he ate through one of her mattresses. Freeman told Hawthorne about her children's toilet habits and how they liked to smear "poop" all over the walls of her home.

8. Although Mr. Hawthorne felt intimidated and uncomfortable when he had to work directly

---

[1] Bowman and Freeman are "friends" outside of work and previously worked together.

3

with Freeman because of her ongoing talk about her sex and personal life, he did not initially do anything about it because he was concerned that Freeman would target him for retaliation if he complained about her "oversharing."

9. During late September 2018, Mr. Hawthorne expressed interest in coaching the BISD freshman girls' basketball team. The coach of the team responded positively to the suggestion. Mr. Hawthorne was interested also because the job would provide a source of added income in the approximate amount of $8000.00. However, Freeman informed Mr. Hawthorne via email on October 11, 2018 that both she and Bowman would not approve such a request and had informed Skip Baskerville that the school would have to consider other options.

10. A few months later in December 2018, the job of Director of Transportation for BISD opened up and Mr. Hawthorne applied for the position. He submitted nine (9) letters of recommendation from both male and female employees of BISD. Bowman was the ultimate decisionmaker as whoever got the job would be reporting to her. Bowman chose a woman, Sherry Nguyen[2] for the position.

11. During the COVID shutdown in 2020, BISD allowed all employees to work from home, Freeman directed warehouse staff to work in pairs of two to limit exposure. Freeman also required Mr. Hawthorne to work "in office" even though his job was such that he could have directed any onsite workers from home via telephone or facetime.

12. Freeman gave Mr. Hawthorne positive employee evaluations but continued to pay him at lower than the midpoint of his "step", M-8. After being denied the opportunity by Bowman and Freeman to be promoted and/or make more money as a coach, Mr. Hawthorne began to wonder what was going on and if he was being discriminated against by Bowman and Freeman. He

---

[2] According to the BISD website, visited on December 1, 2023, all employees working for Katie Bowman in the Finance and Federal Programs Department (25 employees) are female except for one individual.

4

contacted Rick Tice in BISD Human Resources ("HR") and asked why he was not being paid for the job he was doing. Mr. Tice simply responded with information about his pay rate and where it stood in the M-8 tier.

13. In Aprill 2021, the BISD School Board approved an increase in pay for every BISD employee for the upcoming 2021-2022 school year. In July 2021, HR confirmed via email that Mr. Hawthorne's pay would be increasing from a rate of $219.96 per diem to $254.60 per diem and that the rate increase was approved by Bowman. However, Mr. Hawthorne never received that raise.

14. Instead, on August 9, 2021, Bowman informed Mr. Hawthorne via email that the $254.00 per diem was incorrect and would not be his salary. Instead, Mr. Hawthorne's raise was reduced to a rate of $238.21. Mr. Hawthorne inquired about the rate change to both Freeman and Bowman, but he never got a response. The reduced raise that Mr. Hawthorne got, according to BISD's pay scale, was more appropriate for a BISD employee with 3-4 years' work experience rather than the 7-8 years of seniority of Mr. Hawthorne. Mr. Hawthorne was concerned that he was being discriminated against because of the way that Freeman talked to him and that the reduced raise was a product of the discrimination.

15. Mr. Hawthorne was upset with the reduced raise and the treatment from Ms. Bowman and Ms. Freeman and contacted HR about the reduced raise and treatment believing he was again the victim of discrimination by Bowman and Freeman. Mr. Hawthorne was awaiting a response to his inquiry about his salary when he got called to a meeting with HR and Bowman on August 17, 2021.[3] Mr. Hawthorne assumed it was to discuss his salary but instead was told that he was being investigated for claims of sexual harassment and for creating a hostile work environment and was placed on paid administrative leave. Mr. Hawthorne was told to pack up all his personal items and

---

[3] He never received a satisfactory response about the change in the per diem rate of his pay.

5

leave the BISD property. Mr. Hawthorne learned later that on or around August 5 2021, Jordan Bryan, an administrative assistant who worked in an office adjacent to Mr. Hawthorne, had filed a complaint of sexual harassment against him with Bowman and Freeman. No one from BISD interviewed Mr. Hawthorne about Bryan's allegations prior to putting him on administrative leave.

16. During this period, Mr. Hawthorne received multiple phone calls from fellow BISD employees who all said they heard that Mr. Hawthorne was being fired for sexual harassment.

17. Mr. Hawthorne retained the undersigned counsel on August 21, 2021. Mr. Hawthorne retained counsel out of concern that Freeman and Bowman initiated an investigation for claims of sexual harassment out of retaliation for Hawthorne's inquiries into his salary since they refused to tell him about any details regarding Bryan's accusation or interview him regarding her allegations. On August 24, 2021, the undersigned counsel informed BISD via letter that Mr. Hawthorne had retained an attorney and to send all future communications directly to counsel.

18. A telephone hearing was held on September 1, 2021 in which Paige Curry from HR finally interviewed Mr. Hawthorne about the allegations. Mr. Hawthorne was invited to return to work shortly after the hearing. However, Bowman informed Mr. Hawthorne that she was reassigning him to a lower paying job with less seniority and that Mr. Hawthorne would now report directly to her.

19. Approximately five weeks after Mr. Hawthorne returned to work, Bowman wrote him up on October 8, 2021, for "creating a negative work environment" without offering any specific incidents in the write-up but instead used generic accusations.

20. Mr. Hawthorne gave BISD his two weeks' notice on January 3, 2022. Shortly after he submitted his resignation, BISD tried to force Mr. Hawthorne to write up a synopsis of why he was leaving the district and told him that it was policy and therefore required for him to do so." Mr. Hawthorne refused to do so on the advice of his legal counsel.

21. When Mr. Hawthorne received his final paycheck from BISD, it was approximately $1400.00 less than it should have been. Despite requesting an explanation of the shortage, BISD only responded with a chart which did not explain the shortage.

E. **PROCEDURAL BACKGROUND/ EXHAUSTION OF ADMINISTRATIVE REMEDIES**

22. On or around April 7, 2022, Plaintiff filed a Charge 5 with the Equal Employment Opportunity Commission ("EEOC").[4] The US Department of Justice, Civil Rights Division (the "Agency") issued a "Notice of Right to Sue within Ninety Days" letter dated December 30, 2022.[5] Plaintiff files the instant action within ninety (90) days from the date of the Agency's December 30, 2022 dismissal letter.

F. **CAUSE OF ACTION**

**Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e. et seq.**

23. The foregoing paragraphs are re-alleged and incorporated by reference herein.

24. Defendant is an employer within the meaning of Title VII, is engaged in an industry affecting commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. Plaintiff is an employee within the meaning of Title VII.

25. Plaintiff is a white male. A Plaintiff may recover from his employer in a sexual harassment suit based on the conduct of a supervisor. A plaintiff who alleges sexual harassment may establish a violation of Title VII when the harassment (1) involves the conditioning of concrete employment

---

[4] A true and correct copy of the April 7, 2022, Charge 5 is attached and incorporated into Plaintiff's Original Complaint as Exhibit 1.
[5] A true and correct copy of the Notice of Right to Sue in Ninety Days Letter dated December 30, 2022 is attached and incorporated into Plaintiff's Original Complaint as Exhibit 2.

7

benefits on sexual favors (so-called "quid pro quo" sexual harassment); or (2) creates a hostile or offensive working environment, even when the harassment does not affect the economic benefits of the job. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751-52, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998). In the case of Hawthorne, he was exposed to ongoing sexual chatter from his supervisor Shelley Freeman ("Freeman") regarding her sex life, how her husband often forced her to have sex and that so much sex made her "sore." Freeman also made veiled inquiries regarding Hawthorne's private life with this wife which Hawthorne did his best to ignore. Freeman's actions created a hostile work environment under which Plaintiff was forced to work. Plaintiff believed if he reported Freeman, that she would fire him.

26.  When Hawthorne finally stood up for himself in 2021 and demanded answers about the rescinded raise, which he believed (based on past denials of promotions from Bowman and Freeman) to be discriminatory in nature; Bowman and Freeman utilized a coincidentally timed complaint of sexual harassment from Jordan Bryan to suspend Hawthorne, write him up and ultimately demote him.

27.  Plaintiff's supervisors, Shelly Freeman and Katie Bowman, both white females, were empowered by Defendant BISD to take tangible employment actions against Plaintiff which they did in the form of denying him opportunities for advancement, reversing his raise, writing him up for unspecified and vague accusations and ultimately demoting him.

28.  BISD created an ongoing hostile work environment through Defendant's employees Shelly Freeman and Katie Bowman because of Plaintiff's sex.[6] The conduct was so severe that it ultimately caused Plaintiff to be demoted and altered the terms and conditions of his employment such that Plaintiff felt he had no option but to resign in January 2022.

29.  Defendant BISD is strictly liable for Defendant's employees, Shelly Freeman and Katie

---

[6] Which began as far back as 2018.

Bowman because they took a tangible employment action against Plaintiff and demoted him to a "Special Projects Liaison" which removed him from his supervisor position, and which was at a lower pay grade than the job of Warehouse Central Storage Supervisor which had been Plaintiff's position with BISD for eight (8) years.

**Retaliation**

30.  To establish a prima facie retaliation case, a plaintiff must show: (1) he was engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015).  The Equal Employment Opportunity Commission ("EEOC") provides a listing of issues for which it is unlawful for employers to retaliate against employees, these include:

> A. filing or being a witness in an EEO charge, complaint, investigation, or lawsuit
>
> B. communicating with a supervisor or manager about employment discrimination, including harassment
>
> C. answering questions during an employer investigation of alleged harassment
>
> D. refusing to follow orders that would result in discrimination.
>
> E. resisting sexual advances or intervening to protect others.
>
> F. requesting accommodation of a disability or for a religious practice
>
> G. asking managers or co-workers about salary information to uncover potentially discriminatory wages.[7]

---

[7] A list of activities protected from retaliation by the EEOC can be found in the retaliation page on the EEOC website, located at: https://www.eeoc.gov/retaliation (last visited December 3, 2023).

31.     Hawthorne asked his supervisors and his co-workers in HR about why he was not receiving raises. Based on the patterns that began in 2018, Hawthorne believed he was not receiving raises that reflected his seniority in his job scale because he was being discriminated against by both Freeman and Bowman. Hawthorne was also subject to a false claim of sexual harassment which manifested just at the time of Mr. Hawthorne's questioning of the salary increase revocation. Mr. Hawthorne in the September 1, 2021 telephonic meeting had to answer questions in the so-called investigation of Bryan's sexual harassment allegation.

32.     Courts have also held that the act of retaining an attorney is a protected activity. *Young v. CareAlliance Health Servs.*, No. 2:12-2337-RMG, 2014 U.S. Dist. LEXIS 137140 *36 (D.S.C. 2014); *See Connell v. Bank of Boston*, 924 F.2d 1169, 1179 (1st Cir. 1991); *Metro. Transit Auth. v. Carter*, No. 14-19-00422-CV, 2021 Tex. App. LEXIS 278 *21-22 (Tex. App.—Houston [14th Dist.] Jan. 14, 2021, no pet.).

33.     A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation") *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates. *Id*. A tangible employment decision requires an official act of the enterprise, a company act. *Id*. The decision in most cases is documented in official company records and may be subject to review by higher level supervisors. *E.g., Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990). "Temporal proximity between the protected activity and alleged

10

retaliation is sometimes enough to establish causation at the prima facie stage." *See Porter* at 948.

34.     In this case, Mr. Hawthorne was passed over repeatedly for promotion, a chance to earn additional income, increases in salary and was being paid, according to BISD's own pay scale, at the rate of a 3-4th year employee rather than the 13 years of seniority that Mr. Hawthorne held. However, Bowman and Freeman continuously intervened from 2018 to keep Hawthorne from earning more money and being promoted.  In July-August 2021, when Mr. Hawthorne was finally going to get a raise more in line with his seniority, a claim of sexual harassment appeared and without interviewing Mr. Hawthorne, Bowman intervened and pulled his raise, and put him on administrative leave.  After Mr. Hawthorne obtained legal counsel to protect himself, Bowman failed to get him terminated since the sexual allegations against him were not able to be proven. Instead, she demoted him and six weeks later, prepared a "Write-Up" that had no specific allegations against him.  Mr. Hawthorne felt he had no other option but to find other employment because he believed that when his contract was up in June 2022, Bowman would take one final shot at him and not renew his contract with BISD.

**Prima Facie Case**

35.     The Supreme Court has reiterated more than once "that the prima facie case relates to the employee's burden of presenting evidence that raises an inference of discrimination." *See Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S.  248, 252-253 (1981).  "This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Dougl*as also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss. For instance, we have rejected the argument that a Title VII complaint requires greater "particularity," because this would "too narrowly constrict the role of the pleadings." *See McDonald v. Santa Fe Trail Transp. Co*., 427 U.S. 273, 283, n. 11. (1976).  "Further imposing a heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2), which

provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Swierkiewicz v. Sorema N.A,* 534 U.S. 506, 512 (2002). Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See Conley v. Gibson*, 355 U.S. 41, 47 (1957). This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. See id. at 47-48; See also *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168-169, (1993).

### G. DAMAGES

36. As a direct and proximate result of Defendant's conduct, Plaintiff lost the opportunity to finish out his career with BISD and as a result, seeks all equitable relief including but not limited to compensatory damages for all the false and defamatory claims alleged against Plaintiff by BISD which caused Plaintiff emotional distress and forced him to leave the district and find another job.

### H.   ATTORNEY'S FEES AND COSTS

37. Plaintiff is entitled to an award of attorney's fees and costs under Title VII, 42 U.S.C. 200e-5(k).

### I. PRAYER

38. For these reasons, Plaintiff asks for judgment against Defendant for the following:

   a. Compensation for all lost wages and benefits, including loss of Social Security benefits that Plaintiff would have been paid if he had finished out his career at BISD;

   b. Prejudgment interest on lost wages and benefits and Postjudgment interest on all sums, including attorney's fees;

   c. Compensatory damages in an amount to be determined by the Court;

    d.  Reasonable attorney's fees and costs of suit; and

    e.  All other relief to which the Court deems appropriate.

Dated: December 3, 2023

Respectfully submitted,

*/s/ Debra Edmondson*
**Debra Edmondson**
Texas State Bar No. 24045824
debra@edmondsonlawfirm.com

**Joseph Glover**
Texas State Bar No. 24131334
josephg@edmondsonlawfirm.com

**The Edmondson Law Firm, P.L.L.C.**
P.O. Box 92801
325 Miron Dr., Ste. 100
Southlake, TX 76092
Telephone: (817) 416-5291

**ATTORNEYS FOR PLAINTIFF**