IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JAMES HAWTHORNE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00301-BP |
| | § | |
| BIRDVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Motion for Summary Judgment, Brief, and Appendix filed by Birdville Independent School District ("BISD") (ECF Nos. 25-27); Response, Brief, and Appendix filed by Plaintiff James Hawthorne ("Hawthorne") (ECF Nos. 28-30); and BISD's Reply (ECF No. 31). After considering the pleadings, summary judgment evidence, and applicable legal authorities, the Court **GRANTS** the Motion and **DISMISSES** Hawthorne's claims.

## I.      BACKGROUND

This is an employment discrimination case. Hawthorne is a white male who worked for BISD for twelve years, eight of which were as a Warehouse Central Storage Supervisor. ECF No. 22 at 2. He received "exemplary reviews" and awards, and he "was never written up for any kind of disciplinary action" until the incidents at issue in the case. *Id.* at 2-3. He alleges that his supervisor, Shelly Freeman ("Freeman"), created a hostile work environment by constantly discussing her sex life and family issues concerning her children. *Id.* at 3. Although Hawthorne "felt intimidated and uncomfortable" working with Freeman because of her ongoing talk, he did not complain because he worried that she would "target him for retaliation if he complained about her 'oversharing.'" *Id.* at 3-4.

Hawthorne asserts that earlier in his career he did not receive two career opportunities he wanted within BISD due to discrimination by Freeman and by Katie Bowman ("Bowman"), BISD Assistant Superintendent for Finance and Auxiliary Services. In late September 2018, he inquired about coaching a girls' basketball team, but Freeman told him that she and Bowman would not approve that request.  ECF No. 22 at 4. Then, in December 2018, he applied to be Director of Transportation, but Bowman selected a woman, Sherry Nguyen, instead. *Id.* He also asserts that he was required to work in the office during the COVID crisis in 2020, though BISD permitted others to work from home. *Id.*

After not being hired as a coach or as the Director of Transportation, Hawthorne contacted BISD's Human Resources Department ("HR") to find out why he was not being paid more despite his positive evaluations. *Id.* at 4-5. Rick Tice in HR did not respond other than to provide information about his rate of pay and where he was in his pay grade. *Id.* at 5.

In June 2021, BISD's HR Coordinator told Hawthorne that he would be paid $254.60 a day in the upcoming school year because of a system-wide raise, but on August 9, 2021, Bowman told him that this amount was incorrect. *Id.* at 5. Hawthorne received a raise to $238.21 a day, not $254.60. *Id.* Hawthorne contacted HR to complain about his raise and the treatment he received, believing that Bowman and Freemen were discriminating against him. *Id.*

While Hawthorne was awaiting responses to his inquiries about the size of his raise, HR called him to a meeting on August 17, 2021. *Id.* At the meeting, BISD personnel told Hawthorne that a complaint had been filed against him for sexual harassment and for creating a hostile work environment. *Id.* He was placed on paid administrative leave while the investigation continued. *Id.* Hawthorne retained counsel on August 21, 2021. *Id.* at 6. BISD conducted a telephone hearing with Hawthorne on September 1, 2021 to discuss the allegations. *Id.* BISD permitted Hawthorne

to return to work, but Bowman reassigned him to a job that paid less than his then current salary, with less seniority, and told him that she would be his supervisor. *Id.* Hawthorne gave two weeks' notice on January 3, 2022 and resigned his position with BISD. *Id.*

Hawthorne brings two claims in his amended complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq*. He asserts that BISD created a hostile work environment through Freeman and Bowman because of his sex. *Id.* at 8-9. He also claims that BISD retaliated against him for investigating why he was not receiving raises and for retaining a lawyer to represent him. *Id.* at 9-11. BISD seeks summary judgment on both claims, ECF No. 25, and the Court will address the retaliation claim first.

## II.    LEGAL AUTHORITIES

### A.    Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Slaughter v. S. Talc. Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is 'material' if it involves a fact that might affect the outcome of the suit under the governing law." *Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)).

When a movant carries its initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment would be improper. *Duckett v. City of Cedar Park*, 950 F.2d

272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Merely colorable evidence or evidence not significantly probative will not defeat a properly supported motion. *Anderson*, 477 U.S. at 249-50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Id.* at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

The Court views summary judgment evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). Additionally, it resolves factual controversies in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In considering the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The Court grants the motion only if the movant meets its burden and the nonmovant fails to make the requisite showing of a genuine issue of material fact. Fed. R. Civ. P. 56; *Duckett*, 950 F.2d at 276.

4

B.     **Title VII**

1.     **Retaliation**

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). It also prohibits retaliation because a plaintiff engages in a protected activity. *See* 42 U.S.C. § 2000e-3(a); *Starnes v. Wallace*, 849 F.3d 627, 635 (5th Cir. 2017) ("[T]he ultimate question in a retaliation case [is] 'whether the defendant discriminated against the plaintiff *because* the plaintiff engaged in' protected conduct." (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996); (emphasis in *Long*)). Courts determine whether retaliation has occurred by employing the standards set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 469 (5th Cir. 2021).

To survive a motion for summary judgment, a plaintiff must first establish a *prima facie* case by a preponderance of the evidence. *McDonnell Douglas,* 411 U.S. at 802-04; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-54 (1981). To make out a *prima facie* case of retaliation under Title VII, the plaintiff must show "1) [he] engaged in protected activity, 2) [he] suffered an adverse employment action, and 3) a causal link exists between the protected activity and the adverse employment action." *See Wright v. Union Pac. R.R. Co.*, 900 F.3d 428, 433 (5th Cir. 2021) (citation omitted). Once he establishes a *prima facie* case, there is a presumption of discrimination, and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802-04. If the defendant makes such a showing, the burden shifts back to the plaintiff to present evidence of a genuine dispute that the articulated "reason is not true, but instead a pretext for discrimination," or

5

that the defendant's "reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is [the Plaintiff's] protected characteristic." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (citation omitted).

After the *McDonnell Douglas* analysis reaches the pretext stage, the question for summary judgment is whether a rational factfinder could find that the employer intentionally discriminated against the plaintiff on an impermissible basis. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). A "plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). "Pretext-plus" is not required to support an inference of retaliatory discrimination. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," and may, therefore, be enough to prevent summary judgment or judgment as a matter of law. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000); *Sandstad*, 309 F.3d at 897.

However, this showing is not always enough to prevent summary judgment "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148.

### 2.    Hostile work environment

The Supreme Court has held that an employer violates Title VII "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or

pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). The alleged conduct must be both objectively and subjectively offensive to be sufficiently severe or pervasive to alter the conditions of the victim's employment. *Id.* at 21-22.

Courts must examine a hostile work environment claim under a "totality-of-the-circumstances test that focuses on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating[;] and whether it unreasonably interferes with an employee's work performance." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007). "Title VII is not a general civility code for the American workplace." *Green v. Ochsner LSU Health Shreveport*, No. 22-1422, 2024 WL 1057217, at *4 (W.D. La. Mar. 11, 2024) (citing *West v. City of Houston, Tex.*, 960 F.3d 736, 743 (5th Cir. 2020)). "[H]ostile work environment claims are not proven using *McDonnell Douglas* or any other burden-shifting scheme. They rely, for the most part, on direct evidence." *E.E.O.C. v. Bass Pro Outdoor World, Inc.*, 35 F.Supp.3d 836, 857 (S.D. Tex. 2014).

## III.   ANALYSIS

### A.   Events before June 11, 2021 do not constitute additional claims.

BISD argues that the statute of limitations bars any claims that Hawthorne asserts for employment actions that occurred before June 11, 2021. ECF No. 26 at 25-26. Hawthorne responds that his claim "arises from his email to HR regarding an updated salary on June 30, 2021," which was within the statute of limitations. ECF No. 29 at 25. Any claims in this case relating to actions taken before June 11, 2021, would be time-barred. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002), *superseded in part by statute*, Lilly Ledbetter Fair Pay Act, Pub. L. No. 111-2, 123 Stat. 5 (2009). However, evidence of such actions may be admissible as they relate to

Hawthorne's hostile work environment claim. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Morgan*, 536 U.S. at 117. With those limitations in mind, the Court accords evidence of pre-2021 conduct such weight as is proper.

### B.      BISD is entitled to summary judgment on Hawthorne's retaliation claim.

#### 1.      Hawthorne has not made out a prima facie case for retaliation.

##### a.      His salary inquiry was not a protected activity.

For purposes of the first element of a *prima facie* case for retaliation, "[a]n employee engages in protected activity when [he] opposes an employment practice that [he] 'reasonably believes' violated Title VII." *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 224 (5th Cir. 2023). "Complaining about something that is not an unlawful employment practice is not sufficient." *Sanders v. City of Fort Worth*, No. 4:16-CV-1153-A, 2017 WL 1102709, at *3 (N.D. Tex. 2017). "But the reasonable belief standard recognizes there is some zone of conduct that falls short of an actual violation but could be reasonably perceived to violate Title VII." *E.E.O.C. v. Rite Way Service, Inc.*, 819 F. 3d 235, 242 (5th Cir. 2016).

BISD argues that Hawthorne's questioning about his salary did not constitute a protected activity because he "was not asking about his paygrade because he thought he was being discriminated against" but because he thought that he was underpaid given his tenure in the job. ECF No. 26 at 14-15; ECF No. 27 at 12. BISD notes that in his deposition, Hawthorne only identified other men who were paid differently from him, not any woman or other protected class member. ECF No. 26 at 15, ECF No. 27 at 8, 11-12. BISD contrasts Hawthorne's discussions with the HR department with those of the plaintiff in *Muslow*, who sent an in-depth e-mail to her employer explaining why a salary disparity was discriminatory based on sex. ECF No. 26 at 16;

8

*see Muslow v. La. State Univ. & Agric. & Mech. Coll. Bd. of Supervisors*, No. 22-30585, 2023 WL 5498952, at *8 (5th Cir. Aug. 24, 2023). There, the Fifth Circuit found that based on the analysis in the e-mail, Ms. Muslow had a reasonable belief that she was unlawfully discriminated against. *Id.* at *8. By contrast, Hawthorne simply asked HR to "review and let me know my 248 salary for 20[2]1-2022 school year." ECF No. 26 at 15, ECF No. 27 at 26.

In his Response, Hawthorne does not explicitly address the issue of reasonableness. However, he implies that he reasonably believed that he was not receiving raises commensurate with his seniority because of his sex due to BISD's history of passing him over for the coaching and Transportation Director jobs. ECF No. 29 at 18-19. But Hawthorne offered no summary judgment evidence to show that this belief was reasonable, particularly given that the woman chosen for the Transportation Director job had over twenty years of experience as the second-in-command. ECF No. 30 at 22. While the Equal Employment Opportunity Commission ("EEOC") recognizes "asking managers or co-workers about salary information to uncover potentially discriminatory wages" as protected activity, the summary judgment evidence here demonstrates that Hawthorne did not reasonably believe his wages evidenced discrimination when he inquired about them. *See Muslow*, 2023 WL 5498952, at *8; *Wallace*, 57 F.4th at 224.

For example, in his deposition, Hawthorne notably was unable to specifically articulate why he reasonably believed his wages related to his sex, or even explain more generally why actions taken by BISD related to his sex. *See* ECF No. 27 at 11-12, 17-18. At one point, the examining attorney even asked Hawthorne, "Do you understand you filed a lawsuit against the school district claiming sex discrimination?" *Id*. at 18. Instead of providing reasons supporting his belief that he was discriminated against, Hawthorne made general statements about his "feeling" that women at BISD were "attacking" him. *Id*. ("Jordan Bryan and Shelley Freeman and Katie are

all females and I feel like I was being attacked…They're all women, so I felt like I was being attacked."). Rather than identifying women who were paid more than he was for similar work, the only BISD staff members Hawthorne was able to name in his deposition who whose pay exceeded his were men. *Id*. at 11-12.

Accordingly, there is no genuine dispute of material fact as to whether Hawthorne was engaged in a "protected activity" when he inquired about his salary. Because no reasonable jury could find that he reasonably believed his wages were discriminatory, he was not engaged in a protected activity when inquiring about them. Therefore, Hawthorne has not stated the required *prima facie* case for Title VII retaliation, and BISD is entitled to summary judgment on that claim.

> **b.    He has not shown that any other activities were protected.**

BISD also argues that Hawthorne's hiring of an attorney to represent him after he was placed on administrative leave was not a protected activity, nor were any other activities that Hawthorne did not specify. ECF No. 26 at 16-17. Hawthorne does not address these points in his Response. ECF No. 29. In its reply, BISD notes Hawthorne's lack of a response and argues that this indicates abandonment of any claim arising from hiring counsel or other unspecified activities. ECF No. 31 at 2. The Court agrees and deems Hawthorne to have abandoned any such claims.

> **2.    Even if Hawthorne had shown a *prima facie* case, BISD had legitimate non-retaliatory reasons for its actions.**

Assuming that Hawthorne established a *prima facie* case of retaliation, BISD must then provide a "legitimate, non-retaliatory reason" for the adverse employment actions." *Lindsley*, 984 F.3d at 469). BISD offers reasons for each of the three employment actions that Hawthorne challenges.

First, BISD shows that Hawthorne received the same raise as other employees at his MT-8 paygrade for the 2021-22 school year regardless of their sex. ECF No. 26 at 17. Because that

raise applied to everyone at his pay grade, Hawthorne cannot show that "but for" his inquiry to HR about his salary on June 30, 2021 that his pay would have been any different from the salary that he received after BISD implemented the raise. Even though HR initially told him that he would receive a higher amount, BISD has presented summary judgment evidence that explains that mistake and shows that Hawthorne was treated no differently than other employees at his pay grade who worked a similar number of hours. ECF No. 27 at 32.

Second, BISD presented summary judgment evidence that it placed Hawthorne on administrative leave after receiving a complaint about his workplace conduct. ECF No. 26 at 18-19. Bryan, Hawthorne's administrative assistant, reported concerns about Hawthorne to Freeman on August 5, 2021. ECF No. 27 at 38, ECF No. 27-1 at 48. Freeman requested that she write up her concerns. ECF No. 27 at 42. After Bryan did so, BISD determined that an investigation was warranted and placed Hawthorne on paid administrative leave while the investigation continued. *Id*. at 55.

Third, BISD offered evidence that Hawthorne was reassigned to a different job and later was reprimanded due to his conduct. ECF No. 26 at 19. BISD explained that because Hawthorne's conduct as Warehouse Central Storage Supervisor "led to friction between him and other employees and created a negative work environment for his subordinates," it "had legitimate concerns over [Hawthorne's] continued service in that position and continued supervision and inappropriate treatment of subordinate employees." *Id*. Accordingly, the District reassigned and reprimanded him.

BISD offered ample summary judgment evidence of numerous interviews with Hawthorne's colleagues and other information his colleagues submitted in support of its explanations of its actions. *See, e.g.*, ECF No. 27-1 at 7-24. Hawthorne does not directly challenge

11

BISD's explanations other than to note that "Freeman was given no reprimand or warning and was never placed on leave or demoted" following complaints about her. ECF No. 29 at 22.

### 3.    Hawthorne has not shown that BISD's reasons are mere pretext.

If the defendant provides non-retaliatory reasons, "the burden then ultimately falls to the employee to establish that the employer's stated reason is actually a pretext for unlawful retaliation." *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 171 (5th Cir. 2023) (cleaned up). "Under this framework, the employee's ultimate burden is to prove that the adverse employment action would not have occurred but for the protected conduct." *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 437 (5th Cir. 2022)). Plaintiff must meet this burden with "substantial evidence." *Muslow,* 2023 WL 5498952, at *9; *see also Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1002 (5th Cir. 2022) ("In order to survive a motion for summary judgment, the plaintiff must show a 'conflict in substantial evidence' on this issue."). "An employee can establish pretext in the context of retaliation 'by showing that a discriminatory motive more likely motivated her employer's decision.'" *Saketkoo,* 31 F.4th at 1002 (quoting *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 577 (5th Cir. 2020)). "Pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action." *Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 297 (5th Cir. 2024) (citation omitted).

Rather than address BISD's non-retaliatory reasons specifically, Hawthorne argues that they were pretextual because Freeman, a woman, is a nearly identical comparator who was treated differently from Hawthorne when a subordinate complained about her. ECF No. 29 at 19-21. Hawthorne asserts for the first time in his Response that Marina Williams, a former Assistant Director of Purchasing at BISD, made similar allegations about Freeman relating to the creation

of a hostile work environment, but that Freeman was not disciplined as he was. *Id*. at 14-15. He appears to suggest that it was pretextual for BISD to say that the reason he was put on administrative leave was because there was a complaint made about him, since Williams complained about Freeman, but BISD did not place her on administrative leave. Similarly, Hawthorne appears to argue that it was pretextual for BISD to say that it reprimanded and demoted was because subordinates said that he treated them inappropriately, since subordinates made similar complaints about Freeman, but she was not reprimanded or demoted. Hawthorne alleges that there were "stark" differences between how his investigation and Freeman's investigations were handled, "and the clearest reason for this difference is that [] Hawthorne is a male and Freeman is a female. [BISD's] reason for demoting and reprimanding [] Hawthorne is simply pretext." ECF No. 29 at 22.

Hawthorne's argument is unpersuasive for two reasons. First, different treatment of Hawthorne and Freeman says nothing about whether BISD retaliated against him because he engaged in a protected activity. *See Muslow*, 2023 WL 5498952, at *7 ("Under this framework, the employee's ultimate burden is to prove that the adverse employment action would not have occurred but for the *protected conduct*.") (emphasis added); *see also Harris*, 92 F.4th. at 298 ("Further bolstering her retaliation claim, Harris presented evidence that the only other employee who was terminated for poor performance also filed a discrimination complaint.").

Second, Hawthorne's "nearly identical comparator" analysis does not show that BISD's proffered reasons were pretextual because Hawthorne and Freeman are not similarly situated. "Employees are similarly situated when they [1] [hold] the same job responsibilities, [2] share[ ] the same supervisor or ha[ve] their employment status determined by the same person, and [3] have essentially comparable violation histories." *Brown*, 969 F.3d at 580 (internal citations and

quotations omitted). Hawthorne's summary judgment evidence fails to satisfy these elements. On the first element, although Hawthorne notes that he and Freeman "held supervisory positions at [BISD,]" ECF No. 29 at 20, a general assertion that comparators "held supervisory positions," standing alone, does not prove that they had the same job responsibilities. This is sufficient to show that Hawthorne and Freeman are not comparable under the logic of *Brown*, despite the fact that there may be factual disputes on the second and third elements.

Furthermore, BISD asserts that Freeman cannot be a proper comparator since she was Hawthorne's direct supervisor. ECF No. 31. It is undisputed that Freeman was Hawthorne's direct supervisor (ECF No. 31 at 3), and the Fifth Circuit has repeatedly indicated that supervisors are not comparable to their subordinates. *See, e.g.*, *Amezquita v. Beneficial Tex., Inc.,* 264 F. App'x 379, 385-86 (5th Cir. 2008) ("Evidence presented at trial established that Amezquita was a senior account executive in Beneficial's Laredo office and that Torres was her immediate supervisor…Such distinction in position and supervision has been held sufficient to establish that two persons are not similarly situated."). Therefore, Freeman and Hawthorne are not appropriate comparators because Freeman was Hawthorne's supervisor. Accordingly, even if Hawthorne had made a prima facie case of retaliation, he has not shown that BISD's proffered non-retaliatory reasons for the adverse employment actions were mere pretext, making summary judgment warranted for BISD.

### C.   BISD is entitled to summary judgment on Hawthorne's hostile work environment claim.

"To state a hostile work environment claim under Title VII, the plaintiff must show that: (1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known

of the harassment and failed to take prompt remedial action." *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x 209, 215 n. 2 (5th Cir. 2018). BISD contests the fourth and third element and raises the *Faragher-Ellerth* defense. ECF No. 26 at 20-24.

### 1.    Hawthorne has not offered evidence of severe or pervasive harassment.

"To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment." *Saketkoo*, 31 F.4th at 1003. At the outset, Freeman denies that she spoke with Hawthorne about her sex life at all. ECF No. 27 at 41 ("With respect to the allegation of discussing my sex life with Mr. Hawthorne, I have no recollection of having a conversation even once, let alone on a regular basis, that could possibly be interpreted in such a manner."); ECF No. 30 at 19. BISD argues that any such comments to Hawthorne and other employees about Freeman's homelife, including sex with her husband and parenting her children, did not alter the conditions of Hawthorne's employment and create a hostile work environment. ECF No. 26 at 21. BISD also argues that the fact Hawthorne never reported the alleged harassment suggests that even if such discussions occurred, they were not sufficiently severe to support a hostile work environment claim. ECF No. 31 at 6.

In his deposition, Hawthorne testified that Freeman discussed "having sex with her husband, but not in graphic detail." ECF No. 27 at 16. He estimated that these conversations happened "probably once to twice a week." *Id*. at 19. Hawthorne argues that "[w]hile Freeman did share details of her sex life with others, it is the totality of Freeman's actions, in conjunction with Bowman, that created a hostile work environment for [] Hawthorne." ECF No. 29 at 23-24.

Hawthorne's evidence has not shown a fact issue for trial on whether Freeman's alleged talk about her sex life created a hostile work environment. Hawthorne does not argue that these

remarks were physically threatening or humiliating, and he has not described the degree to which these remarks unreasonably interfered with his work performance, aside from making him "dread[]" coming to work. ECF No. 30 at 101; *Turner*, 476 F.3d at 347. Accordingly, no reasonable jury could find that Freeman's conduct was so severe or pervasive that it affected Hawthorne's ability to work. Even if the factual dispute on how often it occurred were resolved in Hawthorne's favor, the other elements suggest the legal standard has not been met.

### 2.      Hawthorne has not shown that any harassment from Freeman was based on sex.

"Title VII does not cover the 'equal opportunity' or 'bisexual' harasser ... because such a person is not ... treating one sex better (or worse) than the other; he is treating both sexes the same (albeit badly)." *Abrams v. American Airlines, Inc.*, 4:04-CV-919-Y, 2007 WL 9775358, at *3 (N.D. Tex. Aug. 30, 2007) (quoting *Holman v. Indiana*, 211 F.3d 399, 403 (7th Cir. 2000)). Similarly, the Fifth Circuit has ruled that "[w]hen the conduct is equally harsh towards men and women, there is no hostile work environment based on sex." *Reine v. Honeywell Intern. Inc.*, 362 F. App'x 395, 397 (5th Cir. 2010); *see also Saketkoo*, 31 F.4th at 1004 ("Although she presented evidence of [Dr. Lasky's] tendency to degrade her, Dr. Saketkoo did not demonstrate that [Dr. Lasky's] actions were based on her gender. The record shows that Dr. Lasky treated male physicians in a similarly abrasive manner and that they also complained about his behavior.").

Here, Freeman's alleged offensive conduct was not based on Hawthorne's sex. *Id.* at 23. Hawthorne stated in his EEOC complaint that Freeman would over-share about her sex life to him and to "any other staff who were around," presumably regardless of the other staff members' genders. ECF No. 27 at 67. Additionally, Williams, a woman who complained about Freeman, also claimed that she was subjected to Freeman's talk about her sex life. ECF No. 30 at 105.

Hawthorne did not address these points in his Response, aside from arguing that the "totality of Freeman's actions" caused a hostile work environment. ECF No. 29 at 22-24.

Hawthorne has failed to proffer evidence sufficient to survive the Motion showing that any harassment he suffered at Freeman's hands was based on sex, and so he cannot meet the third element of a hostile work environment claim. *See* ECF No. 22-1 at 6. The summary judgment evidence shows that at most, Freeman was "treating both sexes the same (albeit badly)." *Abrams*, 2007 WL 9775358, at \*3. This conduct, if true, is unprofessional and inappropriate, but it does not constitute a hostile work environment based on Hawthorne's sex. Accordingly, there is no genuine dispute of material fact as to whether any conversations Freeman had with Hawthorne concerning her sex life or parenting were based on Hawthorne's sex. BISD is entitled to judgment as a matter of law, and summary judgment is appropriate on this claim.

### 3. BISD has not proven entitlement to the *Faragher-Ellerth* affirmative defense.

BISD argues that the *Faragher-Ellerth* doctrine shields it from liability because its Board of Trustees promulgated a sexual harassment policy, and Hawthorne knew he could report harassment but did not do so. ECF No. 26 at 23-24. BISD asserts further that any tangible employment actions were implemented by the HR Department, specifically "Executive Director of Human Resources Curry." ECF No. 26 at 24. Hawthorne did not address these points in his Response, aside from noting that he did not report Freeman because he feared retaliation. ECF No. 29 at 10.

"Under *Ellerth/Faragher*, a defendant can avert vicarious liability for a hostile work environment by showing that (1) the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (2) the harassed employee unreasonably failed to take advantage of any preventive opportunities provided by the employer." *Williams v. Admin. Review*

17

*Bd.*, 376 F.3d 471, 478 (5th Cir. 2004)). "No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 808 (1998)).

BISD has not offered summary judgment evidence other than its Board Policy DIA (Local) to show that it satisfies the requirements of *Faragher-Ellerth*. ECF No. 27 at 56-62. It presented no other evidence of how its efforts to prevent and correct sexual harassment demonstrated reasonable care. The Court therefore cannot determine whether, for instance, BISD trained employees on sexual harassment, informed them of the existence of a policy, showed them where to find it, or told them whom to contact regarding sexual harassment. *See Pullen v. Caddo Parish School Board*, 830 F.3d 205, 211 (5th Cir. 2016). Accordingly, since BISD has not offered summary judgment evidence proving the elements of the *Faragher-Ellerth* affirmative defense by a preponderance of the evidence, it is not entitled to judgment on Hawthorne's hostile work environment claim based on this defense.

### 4. Hawthorne has abandoned any constructive discharge theory of liability he previously raised.

BISD argues that Hawthorne cannot assert a claim for constructive discharge because he did not produce evidence of the "aggravating factors" needed to support such a claim. ECF No. 26 at 25; *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). Hawthorne did not address this point in his Response. ECF No. 24.  BISD notes Hawthorne's nonresponse and concludes that Hawthorne has abandoned this theory of liability. ECF No. 31 at 7. The Court agrees.

## IV. CONCLUSION

Hawthorne has not demonstrated a material issue of fact for trial on either his retaliation claim or his hostile environment claim. Specifically, he has not provided evidence sufficient to raise an issue for trial on whether the actions underlying either of these claims had anything to do

with his sex. On the retaliation claim, he did not show that he was inquiring about his salary because he reasonably believed that his wages were discriminatory because of sex. Furthermore, even if he had made such a showing, he has not demonstrated that BISD's non-retaliatory reasons are mere pretext.

On the hostile environment claim, he did not present evidence that any harassment he suffered was based on sex, but instead, he offered evidence that both men and women were subject to the same type of private sex life and parenting talk from Freeman. Furthermore, even if he had made such a showing, he offered insufficient summary judgment evidence to raise a fact issue that any harassment Freeman perpetrated in the workplace was severe or pervasive. Hawthorne appears to have abandoned any other claims. BISD offered insufficient evidence to be entitled to judgment as a matter of law on its affirmative defense under the *Faragher-Ellerth* doctrine. However, because there is no genuine issue of material fact on Hawthorne's claims, and BISD is entitled to summary judgment as a matter of law, the Court **GRANTS** the Motion for Summary Judgment (ECF No. 25).

It is so **ORDERED** on April 12, 2024.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

19